# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **JOYCE INEZ MOORE,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-01131-CLM |
| **ANDREW SAUL,** **Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Joyce Inez Moore ("Moore") seeks Disability Insurance Benefits ("DIB") from the Social Security Administration ("SSA") based on two impairments: anxiety and fibromyalgia. As the Commissioner essentially conceded at oral argument, the Administrative Law Judge's ("ALJ") conclusion that Moore did not have a medically determinable impairment of fibromyalgia is not supported by the record. While this type of error can be harmless, it's not harmless here. The Court thus vacates the decision below and remands for further consideration.

## I.   Statement of the Case

Moore received two ALJ opinions below. This appeal involves the second. But before the Court details those opinions, it summarizes Moore's impairments, as she explained them to the ALJs.

### A. Moore's Impairments, as told to the ALJs

Again, Moore claims two impairments: anxiety and fibromyalgia. Moore testified that she began dealing with anxiety issues during her childhood and felt panicked going places and being around people. R. at 73. Moore graduated from high school and attended college for one year, R. at 71-72, then worked for her mother's property management business. R. at 44, 74. She then worked from home preparing disbursement sheets and had no interactions with renters or contractors. R. at 74-75. Moore experienced anxiety while dealing with money at her job. R. at 76. Moore typically worked around ten hours per week. R. at 47.

Moore testified that her anxiety can make her black out and not remember things. R. at 46, 77-78. When she is driving, Moore sometimes has to pull over during panic attacks. R. at 79. Her episodes occur weekly. R. at 80. Moore has not gone grocery shopping for years due to anxiety. R. at 46, 90. Shopping also caused Moore back pain and she would need to lean on the grocery cart to get through the store. R. at 49-50.

Moore testified that she was diagnosed with fibromyalgia in 1988 when she was living in North Carolina. R. at 80. Due to her pain, Moore has trouble sleeping and some nights can only sleep for one hour. R. at 54, 77, 81. Moore has pain from head to toe and this distracts her from working. R. at 81-82. At times, the pain is so bad it makes it difficult for Moore to get out of bed. R. at 47. The pain makes it

difficult for Moore to cook, do laundry, or prepare her meals without taking breaks. R. at 48. She estimates she can sit for 20 minutes at a time and has trouble writing and holding objects due to her pain. R. at 82-83. If she stands for more than 10 minutes, Moore experiences pain in her hips and back. R. at 86.

### B. The First ALJ Decision

The SSA reviews applications for disability benefits in three stages: (1) Initial determination, including reconsideration, (2) review by an ALJ, and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4) (2019).

Moore applied for DIB, and the SSA initially denied her claim in February 2013. R. at 150. Moore requested an ALJ hearing. R. at 151-153.

The first ALJ heard Moore's claims in September 2014. R. at 64, 199. Two months later, the ALJ denied Moore's request for benefits, R. at 128-140, finding that Moore did not have a severe impairment or combination of impairments and that her testimony was not entirely credible. R. at 130, 132.

Moore then asked the Appeals Council to review the decision. It did, and in June 2016, the Council vacated the opinion because the ALJ wrongly listed Moore's Date Last Insured. R. at 141-143. The Appeals Council gave two remand instructions relevant here. First, the Council instructed the ALJ to give more consideration to Moore's impairments at Step Two. R. at 143. Second, the Council instructed the ALJ to "give further consideration of Dr. Balcarek's treating source opinion." *Id.*

## C. Determining Disability

Before detailing the second ALJ's opinion—the one at issue here—it is important to lay out the SSA's five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (2019) (Step 1); 20 C.F.R. § 404.1520(c) (2019) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (2019) (Step 3); 20 C.F.R. § 404.1520(e-f) (2019) (Step 4); 20 C.F.R. § 404.1520(g) (2019) (Step 5).

Here, the ALJ's findings at Steps 2 and 3 are the most relevant. Step 2 is important because that is where the error occurred—*i.e.,* the ALJ failed to consider Moore's fibromyalgia as a medically determinable impairment. Step 3 is important

because it is the first step (although not necessarily the only one) that shows why the Step 2 error was not harmless.

**D. The Second ALJ's Decision**

A second ALJ conducted a hearing on Moore's DIB claims in October 2016. The second ALJ issued an unfavorable decision in June the next year.

The ALJ found at Step 1 that Moore did not engage in substantial gainful activity from her alleged onset date of December 31, 2011 through her date last insured of September 30, 2014. R. at 24.

The ALJ found at Step 2 that Moore had a severe impairment of anxiety. R. at 24. Relevant here, the ALJ found that Moore's allegations of fibromyalgia did not rise to the level of a medically determinable impairment. R. at 25. The ALJ also found that, while Moore has degenerative disc disease and degenerative joint disease, these conditions were "not 'severe' as defined by the Regulations." R. at 25.

At Step 3, the ALJ reviewed the medical evidence about Moore's anxiety and found that Moore did not meet the listing criteria under Listing 12.06. R. at 26. The ALJ also found that none of Moore's impairments, individually or combined, met or equaled the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R. at 26.

The ALJ next determined Moore's residual functional capacity: "the full range of light work," with certain limitations. R. at 27.

The ALJ went to Step 4 and 5, where she found that, while Moore was unable to perform any of her past relevant work (Step 4), there were light, unskilled jobs in the national economy that Moore could perform, including laundry classifier, router, or garment sorter (Step 5). R. at 30-31. The ALJ thus found that Moore was not disabled and not entitled to benefits. R. at 32.

Moore requested an Appeals Council review of the second ALJ's decision. R. at 290. The SSA Appeals Council will review an ALJ's decision only for very particular reasons, and the Council found that Moore had not established one of the reasons. As a result, the second ALJ's decision became the final decision of the SSA Commissioner, and thus the decision subject to review by this Court.

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the Court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).

The Court's decision hinges on the first of these roles—*i.e.*, reviewing the ALJ's fact findings. Again, 42 U.S.C. §§ 405(g) and 1383(c) mandate that the

Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). So even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

That said, no decision is automatic, for "despite th[e] deferential standard, it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).

As explained below, this is one of those rare cases in which the Commissioner/ALJ's factual findings are not supported by substantial evidence.

## III. Legal Analysis

Moore raised five arguments in her original brief to the Court. Doc. 8 at 1-2. Because the Court is reversing and remanding on the third argument—*i.e.*, the ALJ wrongly decided in Step 2 that Moore's fibromyalgia was not a medically determinable impairment—the Court does not decide the remaining four issues.[1]

---

[1] Although the Court does not reach it here, the Court notes that Moore conceded at oral argument that her first argument regarding res judicata was meritless because the first ALJ's decision was set aside. Trans. 14.

**I.      The ALJ's finding that Moore's Fibromyalgia is a not a "medically determinable impairment" is not supported by substantial evidence.**

Moore argues that the following finding in Step 2 is not supported by substantial evidence: "Under the circumstances, the undersigned must conclude that the claimant's allegations of fibromyalgia do not give rise to a medically determinable impairment (SSR 96-3).[2]" R. at 25.

During oral argument, the Commissioner essentially conceded the issue: "Your honor, fairly, I think there is a very good argument that Plaintiff has that substantial evidence doesn't support the finding that there was not a medically determinable impact—medically determinable impairment on Step Two." Trans. 11. The Commissioner argued instead that the error was harmless; a contention the Court addresses in Part II. But the Court first explains the ALJ's error because it matters to the harmless error analysis.

> The ALJ made the following fact finding regarding fibromyalgia in Step 2:
>
> There is no evidence the claimant has ever been diagnosed with fibromyalgia or that she has sought treatment for fibromyalgia. Although tender points were noted in the back, as noted below in the regulations, tender points must be shown above and below the waist, which was not shown in the record. Furthermore, even though the rheumatologist stated her symptoms were 'classic fibromyalgia,' all other diagnosis or causes for the symptoms were not ruled out and she did not return after one visit.

---

[2] Social Security Ruling 96-3p, cited by the ALJ, has been rescinded. The SSA applies Ruling 16-3p to determine whether an ailment is a "medically determinable impairment," and if so, whether that impairment is severe.

R. at 24. In his initial brief (*i.e.*, before he conceded the point), the Commissioner used this quote to argue that the ALJ's conclusion was supported by four findings: "1) the lack of evidence of a diagnosis of fibromyalgia, 2) the lack of treatment for fibromyalgia, 3) the lack of evidence that there were tender point above and below the waist, and 4) the failure to rule out other causes for Plaintiff's symptoms." Doc. 9 at 7-9. Each of these findings is refuted by the record.

    1. <u>No Diagnosis of Fibromyalgia</u>: Contrary to the ALJ's finding that "there is no evidence that the claimant has ever been diagnosed with fibromyalgia," R. at 24, the record contains evidence of at least **five** diagnosis of fibromyalgia. Moore testified that she was first diagnosed as having fibromyalgia by two persons (a doctor and a chiropractor) in 1988. R. at 80-81.

    Next, on at least three trips to Primary Care Medical Center in 1997, Dr. Mary Toland specified a "diagnosis" of "fibromyalgia":



R. at 471-73.

In March 2012, Dr. Ruth Yates referred Moore to Rheumatologist William Shergy to investigate "fibromyalgia." R. 479. After meeting with Moore, Dr. Shergy stated that Moore displayed "the clinical picture of fibromyalgia," R. 480, and diagnosed her with having "fibromyalgia syndrome." R. 481.

Two months later, Dr. Edward Whit found that "Patient [Moore] is positive for myalgias." R. at 493. When Moore returned one month later (June 2012), Dr. Whit diagnosed her with fibromyalgia:

```
Southcare Medical Clinic
11220 S. Memorial Parkway, Suite AB
Huntsville, AL 35803
Ph.256 880-5818

Edward G. Witt, D.O.   NPI 1841239654
DEA  XW5063665         Lic: DO556
     BW5063665

Date:  06/05/2012
Patient Information: DOB: 06/07/1963
Patient Name:   JOYCE MOORE

Patient
Address:
```

**DX: Fibromyalgia**

R. at 504.[3]

Finally, in September 2014, Dr. John Balcarek opined that Moore could not work an 8-hour, 5-day-a-week job because "Ms. Moore has fibromyalgia[.]" R. at 532. This is the "treating source opinion" that the SSA Appeals Counsel instructed the second ALJ to "give further consideration" when vacating the first ALJ opinion.

---

[3] These two cites from Dr. Whit's records contradict the ALJ's statement that Dr. Whit made "no specific diagnosis of fibromyalgia" after Moore's May and June 2012 visits. R. at 25.

R. at 143.

2. <u>Never Sought Treatment</u>: The ALJ's finding that Moore never "sought treatment for fibromyalgia," R. 24, is similarly refuted by the record. Dr. Yates referred Moore to a rheumatologist (Dr. Shergy) specifically to investigate "fibromyalgia." R. at 479. Soon after, Moore's chief complaint to Dr. Whit was "joint pain" and "fibromyalgia," R. at 492, and Dr. Whitt prescribed Moore medication for fibromyalgia (Savella). R. at 491, 494.

3. <u>Tender points below the waist</u>: The ALJ's finding that Moore failed to provide evidence of tender points "above and below the waste," R. at 24, is similarly refuted by the record, although not to the same extent.[4] When describing Moore's joint pain/fibromyalgia complaint, Dr. Shergy (the rheumatologist) noted that Moore's pain went from "head to toe" and that she suffered from "chronic" pain in her "full body." R. at 492.

4. <u>Other possible sources</u>: The ALJ's fourth finding, that "other diagnoses or causes for the symptoms were not ruled out," R. at 24, is also refuted by the record. The ALJ made this finding about Dr. Shergy's statement that Moore's case "is the clinical picture of fibromyalgia." *Id*. (quoting R. at 480), but failed to mention the very next sentence: "She does not have other features to suggest an inflammatory

---

[4] The ALJ acknowledged "tender points were noted in the back," R. at 24, so the ALJ's finding is that Moore failed to show tender points below the waist.

synovitis or a connective tissue disease." R. at 480.

\* \* \*

After making these factual findings/statements, the ALJ laid out the proper Step 2 analysis for determining whether a claimant's fibromyalgia (a) amounts to a medically determinable impairment, and if so, (b) whether the MDI is severe. R. at 25, citing Social Security Ruling ("SSR") 12-2p. But the ALJ made no findings after citing SSR 12-2p, *see* R. at 25, meaning that—if anything—the ALJ applied factually inaccurate statements to the correct legal standard. This leads to several concerns about the ALJ's ultimate conclusion, not the least of which is the fact that the ALJ cites no medical opinion that refutes the diagnosis of fibromyalgia made by a rheumatologist and Moore's treating source, among others.

Under these circumstances, the Court finds that the ALJ's Step 2 finding that Moore's fibromyalgia is not a "medically determinable impairment" is not supported by substantial evidence. Even if Moore's fibromyalgia is deemed "severe," which is a distinct Step 2 question, *see* SSR 16-3P, 12-2P, a reasonable person reviewing the record would not conclude that Moore's fibromyalgia is not an impairment, whatsoever—a finding, again, that the Commissioner essentially conceded at oral argument. Trans. at 11. ("I think there is a very good argument that plaintiff has that substantial evidence doesn't support the finding that there was not a medically determinable impact—medically determinable impairment.")

## II. The ALJ's error was not harmless.

The Court's review does not end with finding error in Step 2 because the ALJ's opinion need not be disturbed if the error was harmless. *See Diorio v. Heckler*, 721 F.2d 726, 729 ("We find that the ALJ made erroneous statements of fact, but we conclude that this was harmless error in the context of this case and that the ALJ applied the proper legal standard.").

According to the Commissioner, Step 2 merely "'acts as a filter,' and requires only that Plaintiff establish at least one severe impairment." *Mosley v. Colvin*, No. 2:17-cv-00169-RDP, 2018 WL 905369, at *6 (N.D. Ala. Feb 15, 2018) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). The Commissioner argues that, because Step 2 is merely a filter, "the failure to properly identify any one specific impairment as severe is harmless where a step two finding of even a single [severe] impairment has been made." Doc. 15 at 2 (citing *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). That leads the Commissioner to conclude that the ALJ's failure to find that fibromyalgia is a severe impairment is harmless because the ALJ found that anxiety was a severe impairment.

But there's a problem with this argument: the ALJ did not find that Moore's fibromyalgia was a "non-severe" impairment; she found that it wasn't an impairment *at all*. R. at 25 ("the undersigned must conclude the claimant's allegations of fibromyalgia do not give rise to a medically determinable impairment").

This distinction matters once reviews passes Step 2, as proved by the case relied on by the Commissioner, *Heatly v. Commissioner*, 382 Fed. Appx. 823 (June 11, 2010, 11th Cir.). In Step 3, "the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination" to determine whether the claimant meets a listing. *Id.* at 825. In other words, if an ALJ finds in Step 2 that an impairment exists, but is not severe, that "non-severe" impairment is still considered in Step 3 as part of the "combination" of impairments.

That "combination" is why the error in *Heatly* was harmless. The *Heatly* ALJ found two impairments: a severe status-post cervical fusion and a non-severe chronic back pain. *Id.* at 824-25. Heatly argued that the ALJ erred by failing to find that his chronic back pain impairment was not severe in Step 2. The Eleventh Circuit held that, even if the ALJ should have found Heatly's back pain to be severe, the error was harmless because that fact that the ALJ found it to be an impairment at all meant that the ALJ considered it combined with the cervical fusion in Step 3:

> Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination. Here, that the ALJ did consider all of Heatly's impairments (whether severe or not) in combination is clear. The ALJ discussed in detail Heatly's testimony and medical history, which included Heatly's pain complaints, his limitations due to pain, and the diagnoses he received related to his pain.

*Id.* at 825.

That's not what happened here. Because the ALJ found that Moore's fibromyalgia was not a medically determinable impairment, whatsoever, in Step 2, the ALJ did not consider a combination of anxiety and fibromyalgia in Step 3; she only considered Moore's anxiety. R. at 26-27. Because Step 3 requires the ALJ to consider a "combination of impairments," regardless of severity, *see Heatly, supra*, if the ALJ erred by failing to find that fibromyalgia was an impairment in Step 2, then the ALJ necessarily erred by failing to consider fibromyalgia in Step 3, meaning that the Step 2 error cannot be deemed harmless.

While unnecessary to the Court's conclusion, the Court notes that the ALJ's Step 2 error continues past Step 3, as residual functional capacity—which governs Steps 4 and 5—also focuses on Step 2 impairments, severe or not: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity." 20 CFR §404.1545(a)(2). That's likely why the word "fibromyalgia" disappears from the ALJ's opinion after Step 2; a result that could not happen if the ALJ found that fibromyalgia was a medically determinable impairment.

In short, the Court cannot say the Step 2 error was harmless without plugging fibromyalgia into Steps 3-5, then re-weighing the evidence. To do that would require

conjecture that invades the province of the ALJ. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam) (remanding where the ALJ failed to consider certain factors and indicate their impact on his ultimate functional capacity conclusion); *Mills v. Astrue*, 226 Fed. Appx. 926, 927, (11th Cir. 2007) (remanding because the ALJ failed to give significant weight to findings made by the claimant's psychiatrist, concluding that his limitations were "excessive" and not supported by record evidence, even though the record showed that the claimant had reoccurring problems with depression.) As a result, this case is due to be remanded for reconsideration of whether Moore's medical records and her testimony establish that fibromyalgia is a medically determinable impairment under Rules 12-2p and 16-3P, and if so, whether that impairment is severe.

### IV. Conclusion

The ALJ's Step 2 findings are not supported by substantial evidence. The decision of the SSA Commissioner is thus due to be VACATED AND REMANDED. A separate order will be entered.

**DONE** this 19th day of March, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE